Good morning. The court of division is now in session. The Honorable Justice Margaret S. McBride is presiding. Good morning. Please be seated. I'll call the next case. Galavitz v. Meitus Restoration All right. Both attorneys step up to the podium. Identify yourselves for the record. Please. Good morning, Your Honor. Tony Sasson, S-A-S-S-A-N. I represent the appellant Mark Galavitz. Mr. Sasson, good morning. Good morning, Your Honor. It's Edward Seward, S-E-W-A-R-D, on behalf of Defendant Apolli Meitus Restoration Inc. Is there a famous general with that name? That I do not know. Seward? Seward, yes. I thought he was referring to Secretary of State. Okay. Actually, I think he was a senator of New York. He was a distant relation, but that's … Many generations ago. Many, many generations ago. All right. Thank you. Again, I represent valuable land. That's what I'm told. Okay. All right. Good morning to both of you. And, Mr. Sasson, you may proceed. You may have a seat. Thank you, Your Honor. It's going to please the Court. We're hearing a case. Can I ask a question? Yes, sir. Are you familiar with the Circuit Court's special order number 2021-28? By number, no. Okay. Well, in reference to legal holiday schedule, are you familiar with that? Yes, yes. Okay. And are you familiar with the fact that Kashmir-Pulaski is a recognized holiday in the City of Chicago and County of Cook? I am, yes. Okay. So what would that mean? I have to apologize because I'm trying to think of when Kashmir-Pulaski Day falls. Falls on the 7th of March. That falls on the 7th of March. So what would that make the 7th of March, then? A holiday, which makes a lot of our briefing and motions and arguments somewhat irrelevant. We'll pass over the jurisdiction argument. You would concede that if the 7th of March was a holiday that this appeal or the motion that was filed in the Circuit Court would have been filed on the 30th day. Yes, Your Honor. In fact, it was my motion that was filed. So I was actually making the argument, apparently making the argument more difficult for myself. Okay. All right. That's out of the way. Thank you. Let's go to the merits. Okay, the merits. So with all the procedural rulings or issues that happen in this case, the interesting merit is the application of Eichner and whether the one refiling rule should have applied to this case. Somewhat dovetailed into that issue is when I filed the consolidated motion to reconsider, it also included a motion to supplement a record primarily with Mr. Galaviz's initial attorney's affidavit, which addressed issues as to why there were two cases pending simultaneously in the Circuit Court and how that came to be. And I very briefly just wanted to address that because it ties into part of my argument, I believe, for the misapplication of the one refiling rule in this particular case. As to the point of whether the Circuit Court erred in not allowing us to supplement the record, highlighting what I argued in the briefs, the four issues that a court should consider in supplementing, we believe were satisfied by our position in that case. The order which dismissed the case and relied and applied the one refiling rule relied heavily on this notion that plaintiff's original counsel was form shopping by having the two cases pending at the same time. The court in its ruling disregarded or did not consider my affidavit, in particular regarding the conversation I had with the initial counsel that explained why that happened. Initially, not to beat the point, but the explanation was there was some illness that the attorney was exhibiting. He wasn't really tending to the day-to-day issues because of it, and there was a law court that filed the second case erroneously without knowing the first one was. Well, when you say the second case, you're not talking about the second case in time because the second case is the one that's alive. Yes, Your Honor, but the second case is the one that's alive, the older or the newer of the two. Well, at least that's what this is about, whether it's alive, sorry. Right. Because the judge finally said, he said at some point, I don't have jurisdiction, so. Yes. I couldn't make an affidavit. Correct. So the fact that he disregarded my affidavit regarding the conversation I had with that, and then subsequently were able to get an affidavit from the initial attorney. Now, I also think the record is pretty clear in that from the time I became involved in this case, both me and Mr. Galavis went to somewhat extraordinary lengths to try to reach out to his initial attorney, who quite frankly, and for lack of a better term, was MIA for a considerable period. But, you know, isn't really the issue here whether or not the first voluntary dismissal was a refiling under 13217? Do we really need to talk about all this, how there happened to be two cases, or is it really the meat of this is about whether when the first voluntary dismissal was entered, was that really a refiling under 13217? It's our position that it shouldn't be. What? And it's our position that it shouldn't be. Well, one simple reason could be that it was filed before the second case ever came about. Yes. Right? Yes. So how can you file something before if you're supposed to file it after? I mean, if common sense had anything to do with the law, wouldn't that be your first argument? That was our position and our thought, is how can something be refiled if it was pending while everything else is pending? And we do have common sense in the law, don't we? I like to think we do, Judge. Well, I think there's a few cases that say that. But we can use it. Juries can use it. We can all have a little bit of common sense once in a while. And for the record, just to be clear, the 3246 case and the 3805 case that was filed, the complaints were identical? Yes, Your Honor. Okay. Until you amended. Until I amended. Until you amended and you were given leave to amend that complaint and you added, you corrected a party, you added new allegations. But I agree with Justice Reyes that they virtually seemed to be similar at the time that the DWP was entered. Yes, Your Honor. In fact, I think it's even pointed out that the newer of the two cases, the complaint that was filed was actually file stamped with the stampings of the original one. So it was the identical complaint. And you're correct. Actually, we were allowed to amend twice. There's a second amended complaint. And the second one is when we added some factual allegations based on information I was able to obtain after I became involved. But going back to ICAR, which is the kind of meat in the one refiling rule, I agree, and it is our position, that it's difficult to have something refiled when nothing's been dismissed at the same time, which is what the situation was in this case. Also, in looking at ICAR, as well as these relevant statutes in play here, the 13-2-17 and 2-14-01, they both relate to different things. 13-2-17 relates to an entirely new case after a prior case was voluntarily dismissed by the plaintiff. So it requires a filing of a new action. In fact, really the somewhat limited ruling of Reitner relates to the fact that in that case it wasn't done that way, where the plaintiff refiled under the same case based on some language in the dismissal order. So the first case wouldn't be a new action either way. It wouldn't be considered a new action. I'm sorry, for us? For your purposes, yes. Yes, yes, yes. Additionally, the motion that the circuit court ultimately, I think on its own, denied or held that it didn't have jurisdiction, was filed in the same case as the DWP and relates to the DWP, which is what 2-14-01 relates to. So 13-2-17 is addressing voluntarily dismissals in the period of time allowable to refile a new case, whereas 2-14-01 talks about reinstating a DWP and the requirements for that. It's our position that our motion, and I suspect it will come up in questioning, but it's as inartfully worded as it was, was filed in the same case that we're in front of. And it was filed subsequent to a DWP in that case. So since Eitner applied to 13-2-17, and since 13-2-17 is what the one refiling rule applies to, it's our position that the application of that was incorrect. It was apples and oranges. It was an argument on something that didn't happen. So when the statute says allowed one refiling after DWP, would you agree to as and apply to concurrent filings then? Yes, concurrently. As in our situation, it's still our position, contrary to the circuit court, that it would. In fact, all of the cases relied on by the FLE and ultimately the Court in its ruling did relate to cases that had been dismissed and refiled, though they may have been refiled in federal, state, court, different counties or different courts, but they were not simultaneously pending cases. Through the research throughout this case, I am unaware of another situation where there were simultaneously pending cases dismissed and then having the one refiling rule applied. So this is a case of first impression, and I think it is also beyond the narrow scope of what Eitner would say in terms of the application of the one refiling rule. I did have some argument prepared on the sufficiency of the 214-01 motion as it relates to how we feel that the process the Court took in ultimately finding that it didn't have jurisdiction applied. I can address that now unless there were more questions. What about the issue that the defendant raised with regards to West Chutakata? Your Honor, in that case we viewed the circuit court rule properly. The complaints, while they both related to a house that was remodeled deficiently and with hidden defects and alleged misrepresentation, some of these specific facts in the second amended complaint came from the disclosure agreement. Don't we have an entirely different party? Wasn't there a misnomer? I'm not sure why this is the right answer, but the first complaint against Miedis Restoration, and I apologize if I'm mispronouncing, but it was against another party, wasn't it? Yes, it was, Your Honor, which was another issue with the restoration. And was the individual, Mr. Miedis, in the original complaint? No. Yes. He was? He was. So not Miedis Restoration. Correct. So the individual was in Miedis, and I apologize for mispronouncing it as well, but Miedis Construction was one of the defendant's initial counsel named. I subsequently learned that it was provided information to corroborate that they were not involved in the transaction of this particular property, so they were dismissed. I found the proper defendant was Miedis Restitution. In searching the Secretary of State information on each corporation, different, and I apologize if it was an LLC, different members, managers, or presidents, or so forth. So two different entities. That's one issue with the res judicata, and the other one, as I started to mention, is once I became involved, ultimately I was able to obtain at least the sales contract with the disclosures that added some additional theories of specific misrepresentations that were made and incorporated into the second amended complaint, which is the one that was pending at the time of dismissal. The, I'm sorry, I was going to switch to the 214.01 issue. Sure, go ahead. I don't know if there were any other questions. Okay. Just briefly, Your Honor, acknowledged in the briefs and all along, it was an extremely poorly worded motion to vacate that I filed that should have been considered under 214.01. However, that being as it may, and despite the fact that jurisdiction is always an issue that can be raised, the fact that the whole issue of whether it was a motion to vacate a DWP or a motion to reinstate under Eichner didn't really become an issue until after Eichner was published. A lot of briefing, a lot of issues between the various defendants, including the individual Stanislav Mijitis, who is the member of the appellee, and it never came up. Because of the timing of the 214.01, assuming it was a deficient motion to vacate under 214.01, had the normal process been followed, instead of having two years of subsequent litigation before it was even raised, it could have been denied and I could have been given an opportunity to correct the problem. Because there was still time left under 214.01 to have done so. By having it ruled on the way it was, I wasn't given the opportunity to correct it. My briefs also laid out through the various affidavits that have been filed, arguments that have been made in exhibits through the various motions in this case, that the requirements under 214.01 certainly could have been pled and our position would have been satisfied to have reinstated the case. So we believe that it was, that the circuit court erred in the manner in which it dismissed the case in, number one, having two years elapsed without an opportunity to respond to even a challenge to the motion and correct the deficiencies that did exist. Judge, Your Honors, I would, at this point, unless there are any other questions on this, I would reserve time for rebuttal. Okay. Thank you. We'll allow you some time for rebuttal. Mr. Short, we'll hear from you now. Good morning again, Your Honors. Good morning. Good morning. It would please the Court. Your Honor, Jindyk v. Jindyk, I'm going to mispronounce that name. We'll just say Jindyk, makes clear that a party is only entitled to two filings of a lawsuit. What the plaintiff is suggesting in a case like this is if you can file multiple concurrent lawsuits, then Jindyk doesn't apply. So what the plaintiff is suggesting is they can file 5, 10, 15, even 20 lawsuits, and depending on how any particular lawsuit goes, dismiss the ones that they don't like, keep the ones they have going, and then even if the ones they don't like they just voluntarily dismiss, they can come back later on and refile them because they're all considered separate lawsuits. So apart from the numbering of the complaints, if you have similar complaints, and using your analogy, you've got a number of complaints filed all over the place, isn't this just still the same lawsuit if it's identical language in each complaint? They are the same cause of action. I would agree with the Court they are the same cause of action, but they are different lawsuits. They have different case numbers. There were different filing fees. I think Eigner was talking about those issues. The fact that they have different case numbers shows that they are separate lawsuits, not the same lawsuit, but they are the same cause of action. So Eigner, I mean, Jindyk, in all the cases following it, says you're only allowed two bites at the apple. You're not allowed three bites. You're not allowed four bites. You're not allowed five bites. But was this really two bites at the same apple? Yes, Your Honor. Those two cases when one was voluntarily dismissed? Your Honor, if a case is filed and voluntarily dismissed, and they file another case, and that's also voluntarily dismissed, both of those cases are voluntarily dismissed, but they can't file a third case. No, that's true. Because they've already had the two chances. So whether they voluntarily dismissed it or not, that was their decision, but by doing so, that counts as one of their opportunities. And, again, Jindyk makes clear they only have two opportunities. However, if they use their opportunities, that's their decision, and if they decide to voluntarily dismiss one, they can't come back and say, well, we didn't actually litigate that, so we get an opportunity to litigate that again in the future. It doesn't work that way, Your Honor. Should we delve into the issue that the court abused its discretion when it refused plaintiffs to supplement the record to explain the reasoning for this mishap, so to speak, or whatever you want to call it, the two filings. We'll call it just what it is. Your Honor, are you talking about the motion to reconsider? Yes. Because this, again... Wasn't there always sort of like mumblings of the fact that the first attorney, they couldn't get a hold of him, they could never reach him, they weren't sure who he was or what happened? Wasn't that sort of like pervasive? Not at this point, Your Honor. Okay. That might have been pervasive prior to this. Okay.  So they were able to get a hold of the other attorney, they were able to communicate with the other attorney, they asked for the other attorney's prior records, they were able to obtain the other attorney's prior records, and then they actually got an affidavit from the other attorney, but they didn't seek the affidavit until after they lost the motion to dismiss. Well, what about... Okay, and, you know, this case is a little tricky in terms of the facts. The first case, the lower case number, is the one that was voluntarily dismissed. Correct, Your Honor. And the second one was the one that was DWP'd. Correct, Your Honor. Okay. So when... I mean, does it make any sense that they had their one chance under 13-217 when this first case was filed whatever, erroneously, or whatever? Do you know what I'm saying? Does it make sense to say that they had their refiling based on a case that was filed before the DWP? Well, first off, we dispute that it was erroneously filed, Your Honor. Okay, but even forgetting about how it ended up being whatever. It would have been subject to dismissal as another action pending. But my point is, does it make any sense to argue that their one refiling happened before the filing in the second case that became the live case, so to speak? Your Honor, there is, to defendant's knowledge, no exception by the Supreme Court or any appellate court rule that says if you make a mistake in the filing... But what about the language that says within a year after the filing? The DWP occurs, then the judge vacates it, then they... I mean, I'm not sure I understand. Like I said, these facts are... This is obviously, I think, would you agree a case of first impression, at least factually? I think it's a case of first impression because no one would have ever... It takes... Like I said, we believe this was form shopping, and it takes a lot of nerve to file a second case when you don't like the first judge and then say that first case doesn't count whatsoever. If you look at the facts of this case, even the affidavit of the prior counsel... Well, what is aggravating or annoying or even improper to form shop is? What does that have to do with the one opportunity to refile after the case was... You know, under... We understand the Supreme Court rules, and under JINDEC and all the other cases, you're allowed the two filings. So even if you want to form shop and you don't like the first judge, you can dismiss the case and then refile. Okay? So if your remedy for a mistake is a refile, you have an opportunity to file a second case. So whatever happens in the first case, whatever mistakes were made, your remedy is the ability to file a second case. Now, if you make a mistake with a second case, you can't go back and say, Well, I made a mistake with the first one, so I get a third chance. And that's really what this problem is, is they had a remedy. They had the ability to do it. And now what they're basically saying is one of the first two cases that they filed, since they're claiming it was an error, they get a third opportunity to litigate the case. And the question is, does JINDEC... Do they get a third opportunity when they already had two opportunities? Yeah. And I think JINDEC makes clear that they're only allowed two opportunities. They're not allowed a third opportunity. They're not allowed a fourth opportunity. And if the court is going to say, Well, if they can somehow prove that the first opportunity was an error, they get to file a third opportunity, then that cuts against the Supreme Court rule in JINDEC. And if the court is going to say concurrent cases are not refilings, then basically what the court is going to do is give a green light to every single plaintiff to say, I can file three, four, five cases. Was JINDEC concurrent cases? No, Your Honor. No, it wasn't. It is not. I would agree, Your Honor. Yeah. But JINDEC says two opportunities. Yeah. And let me ask you a question. You keep saying that they were farm shopping. Was this argument ever raised at the circuit court level? Yes, Your Honor. The trial court even did not say that. What did the court say when that was raised? The court did believe it was farm shopping. But whether it was farm shopping or whether it was JINDEC. My question is what was the court's decision with regards to the argument that it was farm shopping? The farm shopping is really irrelevant to the two filing rules. No, but you keep raising it. That's why I want to get a clarification on this. You keep saying that the basis for the two complaints filed concurrently was because they were farm shopping. And you said it was raised before the circuit court. So what did the circuit court say when that argument was raised before it? Well, the circuit court agreed that it was. . . The circuit court thought it was also farm shopping. But whether it was farm shopping. . . Was your honor into that effect? No, Your Honor. Okay. And whether it was farm shopping or they made a mistake or whatever the reason for filing the two lawsuits. It doesn't matter what the reasons for filing the two lawsuits were. All right. Well, let's jump to Grace Giudicata. How do you say these are the same actions when the second complaint eventually named a new party and there were new allegations? Your Honor, the two complaints were identical. Mr. Meadis was in both complaints. All right. Mr. Meadis is the owner of Meadis Restoration. They sued Meadis Construction. But the issue is Mr. Meadis, as the owner of Meadis Restoration, was in both complaints. Okay. So are you privy is there? That is correct. But under people like Burris versus Progressive Land Developments, there is privity. Okay. What about, you know, I mean, has there really ever been a trial on the merits of either one of these complaints? There has not been a trial on the merits, Your Honor. However, the cases say that it doesn't have to have a trial on the merits for Grace Giudicata to apply. Right. But it's an equitable doctrine, isn't it? But the courts have enough to make it. Yes. Okay. All right. Again, Your Honor, the facts of this case are really, although they're convoluted in some aspects of the way the plaintiff has done things, but in a lot of aspects it really is a very simple case in the fact that you have two lawsuits that were filed, two lawsuits that were pending simultaneously, one filed after the other. Yes. They've had two opportunities. We believe that the cases make clear that you are only allowed two opportunities. We know of no case that allows a third opportunity if you make a mistake in a prior case. Your remedy was the. . . You're trying to get back to these facts, which are very hard to keep together straight. But was the first, was the lower number case, was that voluntarily dismissed before the DWP was entered or. . . It was after. After. Okay. So we have case 3246 and case 3805. Yes. Case 3246 was filed first. It's a lower number. 3805 was filed separately. Yes. Secondly. Yes. Case 3805 was dismissed for want of prosecution. Then the plaintiff voluntarily dismissed 3246. Okay. All right. So, in which actually that's a very important point. If there was a mistake in the filings of all of this, case 3246 was still pending. It was still pending after 3805 was voluntarily dismissed. Why didn't the plaintiff proceed with case 3246? It was a pending case. The plaintiff didn't have to dismiss 3246. The plaintiff decided to voluntarily dismiss 3246 on his own. So if the plaintiff is arguing, well, they never had an opportunity to litigate this case, they actually did. They could have just proceeded with the lower case number. It was still pending. And that's actually one of the reasons why we think that this is a form shopping case, because why voluntarily dismiss a pending case when you already have a previous case dismissed other than the fact that you left the judge? Does the form shopping have anything to do, as I've already said, regardless of whether that occurred or not, even if it did and we'll call it form shopping, what does that have to do with the absolute right to refile? It doesn't. Okay. So I don't know why we're really ‑‑ I mean, that's just our explanation as to why we think this convoluted fact pattern happened. Yeah. Okay. That's just kind of ‑‑ And there were two bites at the end. Correct. So it doesn't really matter what the reasons were. Okay. The fact is they've had two opportunities. Crystallize for me if you can. The judge allowed ‑‑ he allowed to vacate the DWP. But then what was his ‑‑ how did he come up with this? He had no jurisdiction to do that. Well, so now you have an issue where case 3805 is DWP'd. Right. Case 3246 was voluntarily dismissed. Right. The plaintiff came in on a 13-217 motion saying that to vacate the DWP in case 3805, stating that the case 3805 has never previously been filed. Okay. Basically, what the ‑‑ Well, did it ‑‑ is it ‑‑ I'm losing the ‑‑ isn't there a year in which to refile? No. No. Not in this case. Why did the judge say, I don't have jurisdiction, I didn't have it to vacate the DWP? Because they didn't bring it as a 1401 petition. Oh, okay. All right. They brought it as a 13-217 motion. Right. But that had to be done within a year. That, no. No? Actually, no. Oh, that's for the refiling under 217. That's correct. The facts are really hard to kind of keep in order. And in this particular case ‑‑ We'll get them in order. Okay. For sure. When we get an issue in opinion. So in this particular case, instead of coming in on a motion to vacate a 214-01 petition to vacate either the voluntary dismissal or the DWP, they came in on a motion pursuant to 13-217 saying they had a year, the DWP was still, they had a year to file the motion because they had the opportunity to refile. But if they don't have the opportunity to refile because they've already filed two cases, then 13-217 is not applicable. Which means they have to come in on a 214-01 motion. And they didn't, they never raised the 214-01 motion until their motion to reconsider. Which they aren't really allowed to do. Correct, Your Honor. They have to raise the matter before the court to get the court to reconsider. All their arguments are based on a motion to reconsider, Your Honor. None of this was raised before the trial court on the motion to dismiss. It was all raised in the motion to reconsider. And again, Your Honor, they had opportunities. They could have proceeded with 32-46. They could have filed a 14-01 petition. But they didn't do any of that. And I think, although they're arguing that they're separate cases, I do think that the counsels in this case should have advised the trial court of the 38-oh, 35, now I'm getting confused. The 32-45. Right, so the counsel in 32-46 should have advised the trial court of the 38-05 case. And the counsel in the 38-05 case should have advised the trial court of the 32-46 case. But Plaintiff's position is, since they're separate cases, they're not obligated to do that. But we're officers of the court. If we're making a statement saying that this cause has never been refiled, when there's been two pending suits, I mean, we're under an obligation to notify the court. I think if those trial courts knew that there were already two cases, that they would have, first off, I don't think the trial court in 32-46 would have given them leave to refile if they've already known that there's another pending case. And the trial court in 38-05 specifically said that the only reason why this was granted was because we didn't know about the 32-46 case. Not to complicate things any further, but let me ask a question. 38-05, it's my understanding from the record, that it was DWP'd at the initial hearing. Correct, Your Honor. All right, okay. And then 32-06... 32-46. 32-46, I'm sorry. 32-46. Was there ever any summons or anything that was issued in the case other than the complaint being filed? To my knowledge, there was no summons issued. Okay. So it was at its very, very preliminary stage, correct? 32-46. Yes. Well, it was, but they didn't... So I don't remember, I have to look at my file for the exact date, but they waited actually several months. So they didn't initially issue a summons in 32-46. They waited like two, three, four months and then voluntarily dismissed 32-46. But whether they issued a summons or not, it was a filed case with its own case number. They paid a separate filing fee. It is a separate case. They didn't pay a filing fee for the second one. Isn't that somewhere in the record here? I do not believe so, Your Honor. Oh, okay. Maybe I'm mistaken. I thought I read that. No, Your Honor. To my knowledge, they would have had to pay a separate filing fee. Okay. Because they filed the first one in person at the clerk's office. They filed the second one in line, online. Online, yes. So unless they have some kind of... To my knowledge, there's been no waiver, fee waiver, where they couldn't have... that they would have had to have filed a separate petition, I mean a separate fee. So our position is Jindeca only allows two filings. They've had their two filings. Once they've had their two filings, 13-217 no longer applies. They couldn't use that as a motion to vacate the DWP. The trial court never had jurisdiction to vacate the DWP under 13-217. They should have brought a 214.01 petition. They never brought a 214.01 petition. They never raised 214.01 until after the motion to reconsider. Now, if the court disagrees with us, that's where we'd have to raise judicata. But, again, the causes of action are the exact same. Although they may have added a few more allegations, the underlying cause of action is the exact same. Mr. Miedas was a party in both lawsuits. There's privity there. Not only is there privity, he owns Miedas Restoration. So whatever happened to Mr. Miedas also affects Miedas Restoration. You have privity. And then once the time for refiling 32-46 is passed, this is only if the court considers them two viable separate lawsuits. Well, then I think raised judicata is a viable argument because at that point they're no longer able to refile 32-46. But don't we have another problem with the raised judicata argument with regards to the DWP being a final order, final judgment? I mean, in this case, is it a final order? Yes, Your Honor. Once one year has passed and the statutes of limitations for all those claims have passed, they cannot refile 32-46. So once they can no longer file 32-46, it's final at that point. Everything related to 2-46 is done and over with. So as a result, we do agree with the trial court that this was two filings. 13-217 doesn't apply. Therefore, the trial court never had jurisdiction to vacate that DWP. Again, the only reason they vacated the DWP was because no one notified the trial court of that. The early lawsuit. The early filed lawsuit. Which really is kind of amazing in the fact that the court vacated the DWP based on the representation that there were no other causes of action relating to this case. And then after the court said that, well, you didn't tell me that, then they're going to come back and say, well, actually, it's 2-1401 petition. The thing is, 2-1401 was not raised until the motion to reconsider. We think it's improper. They waived 2-1401. And we think that the trial court made the proper decision. If the appellate court doesn't think that they made the proper decision relating to the two concurrent lawsuits, 32-46 is over and done with. They can't refile it. As a result of that, I raise here to cut. I would apply and that would make 38-05 also subject to dismissal. Either way, we believe that this case should be dismissed. All right. Thank you. Thank you, Your Honors. Thank you. Mr. Sassen. Thank you, Your Honor. I'm just going to address this largely in kind of bullet points with some of the arguments that counsel made. First of all, and I agree, whether there was form shopping by the initial counsel or not really doesn't, is not dispositive on the legal question. But this is an issue that's been raised with absolutely no facts to support it. It's counsel speculation made out of whole cloth in the face of several affidavits by attorneys that that was not the case explaining it. So to the extent that – Well, how do you get to raise those things in the motion to reconsider that weren't raised before? How did I get to do that? Yeah. So the 214-01 issue. The 214-01 issue was never raised by counsel in any of the parties he represented. It was raised by the court in its ruling. The first time I had an opportunity to address whether the 214-01 was properly pled or properly presented from a procedural standpoint was after the dismissal order. It was never raised in any – Counsel represented Stanislaw Maedas never raised that issue in any of his pleadings. He also represented – But the question is that you can't raise something new in a motion to reconsider, even if the courts – are you saying the judge raised this so that's why you get to respond? Yes. Yes. Well, maybe what I'm saying is the issue of whether the DWP was properly vacated – Yeah. Was never raised in the slew of pleadings and motions that were presented by any of the defendants. The only person who raised the issue of whether it was a proper 214-01 motion was – in the dismissal order was the judge. And it goes back a little to what I was arguing in my opening argument that in the two and a half years of litigation of pleadings, that issue was never raised. I never had to address it. And if it was ever objected to, you know, counsel came in right away for Mr. Maedas before we had the proper defendant for Maedas' restoration. He never raised that. It's the same issue with Mr. Maedas as it would be with the EFLE here. What's your response to the GENDEC case? Counsel is arguing that you don't get a third chance. That's what you're getting here. My response is it's apples and oranges. And it goes back to – Well, how is it apples and oranges? There's no question. GENDEC relates to a filing of a new case. Two bites of an apple, meaning you get one refiling. It's a different way of saying one refiling. Yeah. But in terms of the allegations and the parties, how are these two different lawsuits? This case wasn't refiled. This case was presented on a motion to vacate a DWP. And so we were not seeking to file a new lawsuit. We were seeking to vacate a DWP under one of the two cases that simultaneously were pending. So in light of that, it's our position that GENDEC does not apply to this case. Because there was no refiling in this case. It's our position that the issue is – one of the issues is whether the effect of vacating the initial DWP Yeah. And the sua sponte method in which two and a half years later it was ruled that it could not have been vacated, that it has to be something else, was error. Because, you know, as I said, admittedly, it's not a well-pleaded 214.01 motion. But had it been raised at any time by any of these defendants who had been in there, and if – How soon after the DWP, which is the motion to vacate the DWP, filed? Just short of a year, Your Honor. Somewhere in 10, 11 months. Which is the reason why I referred to – mistakenly referred to the 13-217 in that motion. Is that in my mind I was trying to get it filed before the one year expired. Yeah. But it was a motion to vacate. We weren't seeking to file a new lawsuit. Right. So had that been – had the judge ruling on it, had caught it and said, no, this isn't sufficient for what you need to do, I still would have had over a year under 214.01 to properly plead it. Now, not to say we're taking a year, but there was still time to do that. The way this came about now is two and a half years later, so now we're about three and a half years past the original DWP, the court says to a sponsor, by the way, your 214.01, 2-14.01 motion to vacate. But you didn't file a 214.01, right? It wasn't worded as a 214.01. But you did it within a year. I did it within a year, and I did it within the same case. And in some of the cases that I've cited, there was the – it was the divorce case. In the marriage of student Roth, I believe it was, there was some language in there from the courts saying that at that point, the only thing it could have been is a 214.01. And then there was an issue, again, as to whether it was properly pled or not. But, you know, to raise a properly pled, what is this motion, two and a half years, I think was inappropriate at that point without allowing for the time to correct any errors that there might have been. When 3246 and 3805 were initially filed, was it the same lawyer? Yes. Yes. Yes. And one of the explanations was that he was ill or something, and his clerk filed the case that he shouldn't have filed a second action or something. Correct. Something like that. In his affidavit, yeah. But the affidavit was never considered by the court anyway, right? That affidavit that you finally got around or were able to prepare. Yes. Yes. Right. Anything further, why don't you sum it up? Okay. Thank you very much. I guess the only other point is counsel said there were numerous e-mails between me and prior counsel. Three or four of those e-mails were all at the same time when he sent me certain PDFs of his electronic file, but I never received his file. There was one other e-mail exchange, which happened when I was finally able to reestablish contact with him to get this affidavit. Judge, but to wrap up the case, we feel that in this case the circuit court erred first in making a ruling on whether it had jurisdiction based on the manner in which the DWP was vacated. After two and a half years of subsequent litigation. The one refiling rule under the statute, or even to the extent that Eichner applied it, does not relate to these cases because there was no refiling. This case was not refiled. It was filed in the same case, in the same case number as the DWP. And because of that, not one refiling rule applies, and the portion of the opinion dismissing the lawsuit should be reversed. The portion that the rest of you should be affirmed. All right. Thank you very much, Your Honor. Thank you both. The case should be taken under advisement, and then we're going to switch panels again for our next case.